UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

UNITED STATES OF AMERICA                         CRIMINAL ACTION

VERSUS                                           NO. 04-374

LLOYD HART                                       SECTION "C"

ORDER AND REASONS

This matter comes before the Court on motion to suppress filed by the defendant, Lloyd Hart ("Hart").  An evidentiary hearing was held on March 8, 2006, and the matter was taken under submission.  Having reviewed the evidence, the record, the memoranda of counsel and the law, the Court has determined that the government has failed to carry its burden of proof for the following reasons.

The defendant is charged in a one-count indictment for unlawful possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2).  The evidence indicates that the defendant was arrested without a warrant for this offense at approximately midnight on September 30, 2004, at his home at 3520 Audubon Court in New Orleans.  The arrest led to the seizure of a gun, which is the subject of the indictment.  The motion challenges the existence of probable cause for the arrest that evening.  As a general rule, a warrantless search or seizure must be based on probable cause under the Fourth Amendment. United States v. Castro, 166 F.3d 728, 733 (5th Cir. 1999)(en banc).  A warrantless arrest of an individual in a public place with

1

probable cause does not violated the Fourth Amendment.  United States v. Santana, 427 U.S. 38, 42 (1976).  "A warrantless intrusion into an individual's home is presumptively unreasonable unless the person consents or probable cause and exigent circumstances justify the encroachment."   United States v. Jones, 239 F.3d 716,719 (5th Cir. 2001).   Exigent circumstances that may excuse an otherwise unconstitutional warrantless intrusion into a home include the pursuit of a suspect, the possibility that evidence will be destroyed  and immediate safety risks to police and others.   Id.    Where a police officer arrests or seizes evidence without a warrant, the burden is on the government to prove that the arrest or search was constitutional by a preponderance of the evidence.   United States v. Guerrero-Barajas, 240 F.3d 428, 432 (5th Cir. 2001).

At the hearing, the government justified the detention as a "Terry" stop recognized by the Supreme Court in Terry v. Ohio, 392 U.S. 1 (1969).  Under that Supreme Court decision, a police officer may briefly detain a person for less than probable cause to arrest if the officer has a reasonable suspicion supported by articulable facts that criminal activity may be occurring.  However, in order to enter a person's home, the police must either have a warrant, or be in "hot pursuit" of a person for whom they have probable cause to believe has committed an offense.  Reasonable suspicion is simply not enough.

Arresting Officer Octavio Baldassaro of the New Orleans Police Department testified as the sole witness for the government.    As to the issue of reasonable suspicion/probable cause, he testified that his arrest was based on the following: (a)  he was an experienced police officer specifically assigned to narcotics investigation;   (b)  this particular  neighborhood was known for illegal drug activity; (c) it was late at night, around midnight;   (d)  he and his partner were

patroling in a marked unit, looking for possible illegal activity;  (e) they spotted the defendant standing on his porch when they were about two blocks away; (f) sometime during the time it took to traverse the next two blocks, the defendant saw the police car and immediately placed his hands on his waistband, a gesture the officer said is common when a person has a weapon tucked in his waistband; and (g) the defendant  turned and headed toward the front door.   The officer claimed they were able to detain the defendant before he entered the house.

If the Court accepted this evidence, it would find that there was reasonable suspicion to conduct a Terry stop and the gun found would be admissible.   Standing outside in the middle of the night in a high crime area, and upon seeing the police,  reacting with a furtive gesture consistent with concealed possession of a firearm and immediately turning to get into the house is sufficient "reasonable suspicion" to conduct a brief stop.    However, the Court finds the officer's version lacking in reliability.    It is inherently implausible and conflicts with other reliable evidence presented at the evidentiary hearing.

It is apparent from the photographs admitted into evidence and the testimony that there is but 3-4 feet to the front door of the house from where the defendant was allegedly standing. (Exhs. G-1 & D-1).   The officers were in a police car moving down the opposite side of the street in front of the house.    The Officer Baldassaro testified that the distance from the police car when it stopped to the porch was 15-20 feet.    The officer also testified that the defendant saw the marked unit within two houses of their stopping, and stated several times that, upon spotting the marked unit, the defendant immediately turned to walk towards the front door. Officer Baldassaro did not testify that he shouted out for the defendant to stop or that the defendant hesitated or stopped.    Rather, he claims they were able to stop the police car, get out

3

of the car and with a "fast walk" cross 15-20 feet to reach the defendant before the defendant was able to traverse the 3-4 feet into his home.   It should be noted that the officer testified that after the detention and discovery of the gun on the defendant, he opened the door of the home which was unlocked, which casts further doubt on whether the defendant was unable to get into the house prior to the officers allegedly  detaining him on the porch, as indicated by Officer Baldassaro.

In addition, the reliability of the officer's testimony is further undermined by the other evidence admitted.   Officer Baldassaro claimed no one other than the defendant was on the porch and no one else was around.   Yet the defendant's nephew, Glynn Francois, testified that he was arrested by other officers at the same location within minutes of the defendant's arrest.  While the Court found significant reasons to doubt the reliability of Mr. Francois's testimony, it was supported by the testimony of Jarvis Hart, whom the Court did find to be credible.

In addition, an independent police report documenting Francois's arrest at that time and at the same house was admitted into evidence. (Exh. D-2).   Jarvis Hart's testimony, albeit somewhat confusing and certainly colorful,  nevertheless established to the Court's satisfaction that the police did in fact enter the house prior to detaining the defendant.

Even without consideration of any of the defense testimony, the Court finds that the government had failed to meet its burden when it rested its case.   The government's version of the basic facts surrounding the arrest lacks a credible evidentiary basis and is contrary to other credible evidence.  Without reliable evidence to support the legality of the stop, the motion to suppress must be granted.   Likewise, any statement taken as an immediate result of the illegal detention must be suppressed.

Accordingly,

IT IS ORDERED that the motion to suppress filed by the defendant Lloyd Hart is GRANTED.

New Orleans, this 14th day of March, 2006.

_____
HELEN G. BERRIGAN
UNITED STATES DISTRICT JUDGE